Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 8414 | **DATE** | 9/27/2001 |
| **CASE TITLE** | Rawal vs. Sears | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: We deny Sears' motion for summary judgment [42-1] on Rawal's claim for summary judgment based on her national origin and grant it on the remaining religious discrimination and retaliation claims.**
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 28 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | FILED FOR DOCKETING 01 SEP 28 AM 9:31 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| URMILA H. RAWAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 97 C 8414 |
| | ) |
| SEARS ROEBUCK and COMPANY, | ) Wayne R. Andersen |
| | ) District Court Judge |
| Defendant. | ) |

## MEMORANDUM, OPINION AND ORDER

Urmila H. Rawal ("Rawal") filed a discrimination suit against Sears Roebuck and Co. ("Sears") based on national origin, religious discrimination and two counts of retaliation. Sears has filed a motion for summary judgment on all counts of the suit. We grant summary judgment on the claims for religious discrimination and the two counts of retaliation and deny summary judgment on Rawal's national origin discrimination claim.

## BACKGROUND

The facts stated below are taken from the parties' statements of material facts filed pursuant to Local Rule 56(a) and (b). Sears hired Rawal in 1991 as a part-time Replenishment Clerk at the Sears Wheeling Outlet Store. Sears subsequently laid Rawal off in 1993 when the Wheeling Outlet Store closed, but rehired her in October of 1994 to again work as a part-time Replenishment Clerk at the Sears Woodfield stores. Rawal remained employed at the Woodfield store until October of 1998, when she voluntarily resigned her position.

From the beginning of Rawal's employment until December of 1996, Rawal's immediate supervisor or "Replenishment Team Leader" was Barbara Flentge ("Flentge.") After Flentge retired in January of 1997 Vicky Plasky ("Plasky") became Rawal's supervisor. A woman

named Val became Rawal's supervisor when Plasky resigned from that position. After Val, there was one other woman who acted as Rawal's supervisor, but that woman's name is unknown. Rawal does not allege that Flentge, Plasky, Val or her last (unnamed) supervisor discriminated against her.

Rawal and her supervisors reported to the Operations Manager of the store. Eric Gill ("Gill") was Operations Manager from 1995 until March of 1997. Tom Holmes ("Holmes") succeeded him.

During her employment at Sears Woodfield, Rawal was a member of a Replenishment Team assigned to perform replenishment work in the Women's Ready to Wear Clothing Department. As a part-time Replenishment Clerk, Rawal's duties included removing the plastic from rolling racks of clothing, removing tissue paper from between hangers and clothing, emptying racks of clothing, arranging clothes on the sales floor, opening boxes, doing markdowns, arranging sweaters and other clothing in order of color and size, sorting clothing by department and size. Rawal also "changed the wall," which involved displaying new clothing on the wall in the selling area.

When Rawal was hired as a part-time employee, she signed a "part-time hours acknowledgment form" signifying she understood that she was not guaranteed any specific number of hours each week. During Rawal's employment, the Operations Manager determined the total number of hours to be assigned to each Replenishment Team for the upcoming time period and provided the Replenishment Team Leader with this number. The Team Leader would then prepare the weekly schedule for the Replenishment Clerks on his or her team. When Gill was Operations Manager, he reviewed the schedules to ensure they conformed to the hours he provided. Rawal's schedule was prepared by Flentge, then Plasky, then by her other

2

Replenishment Supervisors.

In early September 1996, Gill promoted Grace Borrelli, ("Borrelli") a part-time Replenishment Clerk on Rawal's Team, to a full-time Replenishment Clerk, which gave Borrelli a guarantee of at least 30 hours a week. The facts are in dispute as to whether Gill had knowledge of Rawal's interest in obtaining the full-time position. Rawal's husband testified that he told Gill and Cathy Janicki ("Janicki"), a Sales Manager in the Women's Ready to Wear Department, of Rawal's interest in the Full-time position. Gill testified that he did not recall the conversation.

Rawal claims the full-time position should have been given to her and the only reason she did not receive the position is because of her national origin and her religion. Gill testified that he did not give her the position because he lacked knowledge of her interest and that she needed to improve her performance. He also testified that while there were no set criteria for the position, he gave it to Borrelli because she had told him she wanted to work full-time and her performance had been very good. Shortly thereafter, Gill also moved Bonnie Gugliemino ("Gugliemino"), a full-time Replenishment Clerk, from Home Fashions to Rawal's Replenishment team.

Gill subsequently learned from John Cashman ("Cashman,") the store General Manager, that Rawal's son had called him to complain that Rawal had been upset she did not receive the full-time position. Cashman also told Gill that Rawal's son had said that Rawal previously had problems with Janicki. Gill never spoke directly to Rawal's son.

Janicki was Sales Manager in Women's Ready Wear until June 1997 when she moved to a position in Sears Corporate. Rawal did not report to Janicki at any time during her employment.

3

On September 17, 1996, as a result of the phone call from Rawal's son to Cashman, Gill had a meeting with Rawal and Janicki to discuss the situation. At this meeting Rawal stated that she should have received the full-time position over Borrelli because she had worked for Sears longer than Borrelli. Gill testified that he told Rawal at this meeting of the reasons for Borrelli receiving the position over Rawal. He also stated that he would consider her for the next full-time position. Gill also told Rawal of certain problems with her work performance.

During the September 17, 1996 meeting, Janicki and Gill both testified that they told Rawal that Janicki did not have any involvement in any employment decisions related to Replenishment Clerks because they did not report to Janicki. Rawal agrees to that she reported to her Supervisor and then to Gill.

Rawal asserts that during this meeting she complained that Janicki had thrown clothes at her and reduced her work hours. Rawal also asserts that Janicki and Gill also attempted to cancel her two-month vacation she had planned for December 1996 through January 1997. Rawal had received permission for the vacation from her supervisor months earlier. Gill and Janicki testified that Rawal did not complain about Janicki and, further, that no one attempted to cancel Rawal's vacation. In fact, Rawal was allowed the vacation time.

After the above-mentioned meeting between Rawal, Gill and Janicki, Rawal's son called Nancy Turk ("Turk,") of Sears Corporate Human Resources and reported that Rawal had "concerns" about her employment. Turk met with Rawal and her son to discuss these "concerns," which included Janicki throwing clothing at Rawal, the fact that Rawal's hours had been reduced, and that Rawal had not been given the full-time position. Turk's understanding of the "throwing of the clothes incident" was that it had been caused by the fact that the clothes were not arranged correctly and that there was no attempt to injure Rawal by throwing the

4

clothing.

Turk went on to further investigate the situation, but did not view it as a discrimination case. Turk was told the complaints above were merely concerns and there was no mention of discrimination at the meeting. Rawal and her son told Turk that everyone in the Ready to Wear Department had a problem with Janicki, but no one wanted to say anything. Rawal also told Turk that Janicki had threatened to terminate Rawal and had criticized her performance. After the meeting Turk gave Rawal's son the phone number for Gary Clements ("Clements,") Regional Human Resources, in case he wished to discuss the matter further.

After reviewing Rawal's schedule and pay documentation, Turk determined that Rawal's hours had not been reduced. Turk also met with Janicki and told her throwing clothes was an inappropriate behavior. Turk heard nothing more from Rawal or her son.

Rawal and her son contracted Clements to discuss the same matters they had discussed with Turk. According to Clements, neither Rawal nor her son complained that Rawal had been the subjected to discrimination, but Clements still met with the individual employees at the store to investigate the situation. As a result of his investigation, Clements testified that he thought Rawal's concerns were largely unsubstantiated, but that management at the store should have made it clearer to Rawal what was expected of her. Clements heard nothing more from Rawal or her son.

During her employment Rawal continuously wore a *bindi*, or dot, on her forehead. Rawal alleges that Janicki told her to remove the religious symbol, the *bindi*, from her forehead or she would be terminated. Rawal refused to do so and subsequently filed a charge with the Illinois Department of Human Rights. She then went on medical leave and Janicki subsequently moved to Sears Corporate. Rawal continued to wear the *bindi* until she resigned in October of

5

1998. Janicki denies that the she ever threatened Rawal and that she was not aware of Rawal's religion at the time of she threw clothes at Rawal.

On or about April 2, 1997 Gill presented Rawal with her 1996 performance review, which he had prepared before he left the Operations Manager position in March. Rawal commented on the review and signed it. The next day, Holmes, the new Operations Manager, received a call from Rawal's son stating that Rawal was not happy with her review, that she had not wanted to sign it and that her comments had been incorrectly recorded. Rawal's son then requested a copy of the review. Holmes declined to give it to him and told him that the information was not available for release to non-employees and that Rawal herself would have to pick up a copy of the review.

Rawal filed a charge with Illinois Department of Human Rights and with the EEOC. Rawal received a Notice of Right to Sue on or about September 4, 1997 and her law suit was filed on or about December 5, 1997.

Rawal alleges that she was not promoted to a full-time position because of her national origin, East Indian. She further alleges that Janicki retaliated against her for making complaints about discrimination when Janicki threw clothes at her and caused her hours to be reduced. Rawal also claims that Janicki told her to punch out early, caused her work performance to be criticized unjustly, and caused her to not receive extra hours during the Christmas season. Janicki is also alleged to have threatened Rawal with discharge and to have attempted to cancel Rawal's previously approved two month vacation. Finally, Rawal alleges that she was discriminated against on the basis of her religion, Hindu, when Janicki purportedly told her to remove the *bindi* from her forehead or be fired.

Janicki, Gill and Holmes deny they took any adverse employment action against Rawal

6

on the basis of her national origin or religion. Gill, Janicki, Turk, Clements and Holmes deny that Rawal complained to them that she believed that she was being discriminated against on any basis.

Rawal resigned her employment in October 1998. She testified that she elected to resign her employment because Sears had reduced her hours and because she was not receiving much social security.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Salima v. Scherwood South, Inc., 38 F.3d 929, 932 (7th Cir. 1994). In considering such a motion, the court accepts as true the facts set forth by the non-moving party and draws all justifiable inferences in that party's favor. Wade v. Byles, 83 F.3d 902, 904 (7th Cir.), cert. Denied, 519 U.S. 935, 117 S. Ct. 311, 136L. Ed. 2d 227 (1996). Credibility determinations and weighing evidence are jury functions, and not those of a judge when deciding a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513. 91 L. Ed. 2d 202 (1986).

A dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 91 L. Ed. 2d 265, 106 S. Ct. 2548 /91986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." Id. at 232-24. Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing

a genuine issue for trial. Bank Leumi Le-Israel, B.M. v Lee, 928 F.2d 232, 236 (7th Cir. 1991).

Title VII establishes that it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1), Bahl v. Royal Indemnity Co, 115 F.3d 1283, 1290 (7th Cir. 1997).

An employee may prove that an employer violated this provision by providing either direct or indirect evidence of unlawful discrimination. Bahl, 115 F.3d at 1290. Under the direct evidence approach, the plaintiff can prove discrimination by presenting direct or strong circumstantial evidence. Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 723 (7th Cir. 1998). "Direct evidence is that which if believed by the trier of fact will provide the particular fact in question without reliance upon inference or presumption." Kennedy, 140 F.3d 723. Direct evidence supporting a claim of intentional discrimination is rare; therefore, a court must carefully review affidavits and depositions for circumstantial proof which, if believed, could show discrimination. Drake v. Minnesota Mining and Mfg. Co., 134 F.3d 878, 883 (7th Cir. 1998). Once the plaintiff presents such direct evidence, the defendant must prove it would have made the same employment decision even if it had not taken the protected status (i.e. race, religion, national origin) into account. Oates v. Discovery Zone, 116 f.3d 1161, 1170 (7th Cir. 1997).

Under the indirect approach, a plaintiff must first establish a prima facie case. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800, 36 L. Ed. 2d 668, 93 S. Ct 1817 (1973); Gosh v. Ind. Dept. of Environmental Management, 192 F.3d 1087, 1090-91 (7th Cir. 1999). Once a plaintiff has successfully established her prima facie case, a presumption of discrimination is created and the burden shifts to the defendant, who must provide a

8

nondiscriminatory reason for the adverse employment actions. McDonnell Douglas Corp., 411 U.S. 802. If a defendant rebuts the presumption by presenting evidence of a valid dismissal, then the plaintiff must show the reason offered by the defense was false and only a pretext for discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507-508, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993).

An employee can establish pretext by proving one of the following: (1) defendant's explanation had no basis in fact; (2) the explanation was not the real reason; or (3) the real reason stated was insufficient to warrant the termination. Bahl, 115 F.3d at 1291. In determining whether an explanation is merely pretext, the test is not whether the reason for firing was a correct business judgment, but rather that the decision maker acted honestly on the offered non-discriminatory explanation. Id. In other words, a plaintiff may establish pretext by showing the defendant's proffered reasons are either lies or completely lacking in factual basis. Mills v. Health Care Corp., 171 F.3d 450, 458 (7th Cir. 1999). If the plaintiff shows the defendant's alleged reason is false, then the trier of fact can reasonable infer from the falsity of the explanation that the employer is concealing a discriminatory purpose. Reeves c. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 147, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000).

I. **National Origin Discrimination Claim**

Rawal claims Sears discriminated against her based on her national origin by not failing to promote her to Full-time Replenishment Clerk. Rawal's national origin is Indian. As Rawal herself stated, there is little direct evidence, if any, of discriminatory intent, so she must proceed under *McDonnell Douglas* and establish that (1) she was a member of a protected class; (2) she was meeting Sears' legitimate performance expectations; (3) she suffered materially adverse employment action; and (4) the employer treated similarly situated employees outside

9

the protected class more favorably. See Johnson v. Zema Systems Corp, 170 F.3d. 734, 742 (7th Cir. 1999). Sears (in its brief at page 9, note 6) concedes that Rawal has met three of the four criteria and only challenges Rawal's job performance.

Sears alleges that Rawal was not performing her job in a satisfactory manner and that she had been notified of this. Gill testified that he perceived Rawal to be either unwilling or unable to work outside of her current department and that she did not complete the work she was given in a timely and satisfactory manner. Janicki testified that she never criticized Rawal's work individually, but that she did criticize the entire Replenishment Team's work. The only Performance Evaluation that was available was the one completed in April of 1997, after Rawal was denied the position, which gave Rawal an unsatisfactory score. The Performance Evaluations for other years were not available, but Rawal's payroll records showed Performance Evaluation scores of satisfactory or better prior to the 1997 Performance Evaluation. The question of whether Rawal was meeting Sears' legitimate expectations is in dispute and we cannot, as a matter of law, grant Sears Summary Judgment on this claim based on its argument that Rawal has not satisfied her prima facie burden.

Sears also contends that Gill gave the position to Borrelli because he did not know Rawal was interested in the position as its non-discriminatory reason for Rawal not receiving the promotion. This in turns shifts the burden back to Rawal to prove that the reason offered was false and only a pretext for discrimination in the job. Rawal's husband testified that he personally told Gill of Rawal's interest in the job. Gill does not recall that he was notified by Rawal's husband of her interest in the full-time position. Therefore, this fact is also in dispute. Although Rawal's evidence is thin, we decline to resolve the factual issues presented by the parties and deny Sears' Motion to Dismiss Rawal's national origin claim of employment

10

discrimination.

## II. Religious Discrimination Claim

Rawal's claim of religious discrimination is based on the incident involving herself and Janicki during which Janicki told Rawal to take her *bindi* off or that she would be fired. Rawal did not remove the *bindi* and continued to wear it until she resigned in from her position with Sears.

Taking these facts and inferences in the light most favorable to the non-movant party, the Court concludes there is no direct evidence of discrimination presenting a genuine issue for trial. Unless an employee is authorized to speak for the decision maker at issue, the statements of a non-decision maker are imputed to the decision maker only if the former influenced the latter's decision. Swanson v. Leggett and Platt, Inc., 154 F.3d 730, 733 (7th Cir. 1998). In order for isolated, derogatory statements to qualify as proof of discriminatory intent to support a claim of disparate treatment, the remarks must have been made concurrently with the discharge or causally related to the decision making process. Geier v. Medtonic, 99 F.3d 238, 242 (7th Cir. 1996). Thus, direct evidence of discriminatory intent must not only speak directly to the issue of discriminatory intent, it must also related to the specific employment decision in question. Kennedy, 140 F.3d at 723 (held that even if the comments could be viewed as discriminatory, the comment did not serve as evidence plaintiff was terminated for discriminatory reasons because the comments were made by a supervisor not involved in making the decision to terminate the plaintiff).

Janicki, who allegedly made the comments was not Rawal's supervisor. In her deposition, Rawal also admits that none of her direct supervisors discriminated against based on her religion. Rawal has not offered any direct evidence of discriminatory intent in any decision-

11

maker's mind.

However, random comment, although not direct evidence, may be relevant to the question of indirect evidence. Indurante v. Local 705 Int'l Bhd. Of Teamsters, 160 F.3d 364, 367 (7th Cir. 1998.) Under the indirect approach, to establish a prima facie case of religious discrimination, a plaintiff must show (1) the observance or practice conflicting with an employment requirement is religious in nature; (2) show that the religious observance or practice was called to her employer's attention; and (3) the religious observance or practice was the basis for discharge or other discriminatory treatment. EEOC v. United Parcel Serv., 94 F.3d 314, 317 (7th Cir. 1996). The only evidence that Rawal proffers to demonstrate that Sears knew of the religious significance of the *bindi* is the incident with Janicki. Rawal testified that after Janicki told her to remove the *bindi*, she explained the significance of the symbol to her. However, there is nothing in the record to support Rawal's assertion that anyone in a position to influence her employment status at Sears was aware that the *bindi* was a religious symbol. Janicki did not testify that she told anyone about this conversation, she denies that the conversation took place at all. Most fatal to her claim, Rawal admitted that none of her supervisors ever discriminated against her based on her religion. Therefore, we grant Sears' motion for summary judgment in regard to Rawal's claim of religious discrimination.

### III. Retaliation

Rawal alleges Sears retaliated against her by taking three actions: (1) reducing her hours, (2) harassing her, and (3) giving her a poor performance evaluation. For Rawal to go forward with a claim for retaliation she must shows that (1) she engaged in a statutorily protected expression; (2) as a result of her protected expression her employer took adverse job actions against her and (3) there is a causal link between the protected activity and the adverse job

action. Miller v. American Family Mutual Insurance Co., 203 F.3d 997, 1007 (7th Cir. 2000). Rawal claims to have engaged in protected expression when she spoke with Turk and Clements about not receiving the promotion and about Janicki's behavior. In both of those situations Rawal stated to Turk and Clements that she was not complaining, but merely wanted to discuss her "concerns" in regard to her employment. Although this issue had not yet been ruled on, several other circuits have held that informal complaints of discrimination constitute protected expression under Title VII. Lamber v. Ackerley, 190 F.3d 997. 1007 (9th Cir. 1999); EEOC v. Romeo Cmty. Schools, 976 F.2d 985, 989 (6th Cir. 1992); EEOC v. White and Son Enter., 383, 387 (10th Cir. 1984). Because Rawal failed to establish that she suffered an adverse employment action, and further, has not demonstrated any causal link between any effect on her job status and the alleged protected expression, we need not decide whether her informal complaint constituted a protected expression.

This circuit has firmly established that for there to be an adverse employment action, an employee must suffer a job loss, demotion or other negative job consequence. Sweeney v. West, 149 F.3d 550, 556 (7th Cir. 1998). The only claim Rawal has which might be considered an adverse employment action is the reduction of her hours. However, Sears has shown that Rawal signed an agreement stating that she was not guaranteed any set number of hours and, further, that Gill (and later Holmes) divided the available hours between the Replenishment Teams and the supervisors then split those hours between the Replenishment Clerks on their teams. Rawal, as well as many other Replenishment Clerks had variations in their hours. Rawal has now shown that she was treated any differently from other clerks as a result of any complaints she allegedly made.

Rawal also claims Sears retaliated against her because Janicki allegedly harassed her.

13

The claims of harassment include: (1) making Rawal punch out early; (2) blaming Rawal for errors made by other employees and threatening her with discharge alleged poor performance; and (3) throwing clothes at her. These alleged actions do not rise to the level necessary to show a materially adverse employment action. Krause v. City of LaCrosse, 246 F.3d 995, 1000 (7th Cir. 2001). Rawal has failed to proffer enough evidence to prove a prima facie case of retaliation. Further, Rawal admits that Janicki treats everyone badly, which suggests Janicki did not treat Rawal any differently than others who did not engage in any alleged protected expression. Further, Rawal herself is not sure whether the incidents with Janicki took place before or after she complained about not receiving the promotion.

Rawal's claim that Gill returned from Sears' corporate headquarters merely to single her out for a poor performance review is not supported by any evidence in the record. Gill reviewed all of the Replenishment Clerks in Rawal's department at the same time. Rawal was not singled out in any way. Further, Rawal offers no evidence – other than her own opinion – that this performance review was unwarranted. Therefore, her retaliation claim is groundless.

Rawal failed to show she suffered adverse employment actions as a result of engaging in protected expression or that there was a causal link between the alleged adverse employment action she experienced and the protected action. Therefore, we grant Sears' motion for summary judgment on Rawal's retaliation claims.

## CONCLUSION

For the foregoing reasons, we deny Sears' motion for summary judgment on Rawal's

claim for summary judgment based on her national origin and grant it on the remaining religious discrimination and retaliation claims.

It is so ordered.

Wayne R. Andersen
United States District Judge

September 27, 2001